UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

HAI THAI,

Petitioner,

v.

KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,

Respondents.

Case No.: 3:25-cv-02436-RBM-MMP

**ORDER:**

**(1) TENTATIVELY GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**(2) SETTING HEARING FOR OCTOBER 23, 2025**

On September 17, 2025, Petitioner Hai Thai ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging the lawfulness of his detention by United States Immigration and Customs Enforcement ("ICE"). (Doc. 1.) Petitioner filed a Motion for Temporary Restraining Order ("TRO Motion") the same day. (Doc. 2.) The Petition and TRO Motion seek the same relief—Petitioner's release from detention. Respondents filed a Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response") (Doc. 7), and Petitioner filed a Traverse in Support of Petition for Writ of Habeas Corpus ("Reply") (Doc. 9.)

For the reasons set forth below, the Petition is tentatively **GRANTED**. The Court **SETS** a hearing for **October 23, 2025 at 10:00 a.m. in Courtroom 5B** of the Edward J. Schwartz United States Courthouse.

# I. BACKGROUND

## A. Factual Background

Petitioner is a refugee of Vietnam who fled to the United States with his family in 1979. (Doc. 1 at 3, 24.[1]) Petitioner and his family became lawful permanent residents. (*Id.*) In 2002, Petitioner was convicted of domestic violence and placed in removal proceedings, but was released on bond and ultimately granted a cancellation of removal. (*Id.* at 3, 24–25.) Between 2004 and 2009, Petitioner "was convicted of several other offenses, including simple possession of methamphetamine and violating a restraining order." (*Id.* at 25.) In 2009, Petitioner was again placed in removal proceedings, and this time an immigration judge ordered him removed to Vietnam. (*Id.*) But at the time, Vietnam refused to accept for repatriation Vietnamese nationals who entered the United States as refugees before 1995. (*Id.* at 4–5 n.2 & 3.[2]) ICE detained Petitioner for about 90 days while it sought to remove him to Vietnam. (*Id.* at 25.) ICE then released Petitioner from custody under an Order of Supervision "because ICE was unable to obtain a travel document." (Doc. 7-1, Declaration of Jason N. Cole ["Cole Decl."] ¶ 5.) While he was on release, Petitioner generally attended his check-in appointments as required by his Order of Supervision, but missed one appointment in 2011 or 2012. (Doc. 1 at 25.) After Petitioner missed this appointment, ICE detained him for another 90 days before releasing him again. (*Id.*)

On August 25, 2025, ICE arrested Petitioner at his workplace and "made [him] sign a revocation of [his] order of supervision." (*Id.*) When Petitioner asked why he was being

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

[2] *See* U.S. Embassy & Consulate in Vietnam, *Chronology of US-Vietnam Relations*, https://vn.usembassy.gov/chronology-of-u-s-vietnam-relations/; Agreement Between the Government of the United States of America and the Government of the Socialist Republic of Vietnam on the Acceptance of the Return of Vietnamese Citizens, art. II, March 22, 2008, https://www.state.gov/wp-content/uploads/2019/02/08-322-Vietnam Repatriations.pdf.

arrested, ICE said "haven't you been watching the news?" (*Id.*) Petitioner represents he has not received an informal interview or had an opportunity to respond to the reasons for the revocation of his release. (Doc. 1 at 16; Doc. 9 at 2.) ICE is currently putting together a travel document request to send to Vietnam and "is not seeking to remove Petitioner to a third country." (Cole Decl. ¶¶ 7–9.)

### B. Procedural Background

Petitioner filed the instant Petition against Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Jesus Rocha, and Christopher LaRose (collectively, "Respondents") (Doc. 1.) Petitioner concurrently filed the TRO Motion (Doc. 2), which largely repeats the allegations in the Petition. On September 22, 2025, the Court ordered Respondents to show cause why the Petition and the accompanying TRO Motion should not be granted by filing a written response. (Doc. 4 at 2–3.) On September 25, 2025, Respondents filed the Response. (Doc. 7.) On September 30, 2025, Petitioner filed the Reply. (Doc. 9.)

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner argues that his detention unlawfully violates: (1) the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i); (2) the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) the Fifth Amendment. (Doc. 1 at 2, 9–17.) Petitioner also argues that ICE may not remove him to a third country without providing him with

adequate notice and an opportunity to be heard. (*Id.* at 17–21.)

Respondents do not meaningfully respond to Petitioner's arguments concerning ICE's regulatory violations. Rather, Respondents argue that Petitioner is properly detained under 8 U.S.C. § 1231(a) because "ICE revoked Petitioner's Order of Supervision for the purpose of executing his final order of removal." (Doc. 7 at 6.) Respondents also argue that Petitioner is jurisdictionally barred from bringing his claims under 8 U.S.C. § 1252(g), and that Petitioner's ongoing re-detention falls within the six-month detention period presumptively reasonable under *Zadvydas*. (*Id.* at 3–9.)

**A. Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional argument. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). For the reasons set forth below, the Court finds that it has jurisdiction over Petitioner's claims.

Respondents argue that the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g). (Doc. 7 at 3–4.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the legitimacy of his 2009 order of removal. Rather, he challenges the legality of his detention, which does not require judicial review of the Attorney General's decisions to commence proceedings, adjudicate cases, or execute removal orders. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025) (noting courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal

order, which are not.”).

Respondents argue that Petitioner’s claims “necessarily arise” from the Attorney General’s decision to commence removal proceedings against him. (Doc. 7 at 4.) This interpretation of 8 U.S.C. § 1252(g) would “eliminate judicial review of immigration [detainees’] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241.” *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Zadvydas*, 533 U.S. at 699; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts in this District have found in similar cases, the Court has jurisdiction to hear Petitioner’s claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Rokhfirooz v. LaRose et al.*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025); *Palma v. LaRose*, Case No. 3:25-cv-1942-BJC-MMP (S.D. Cal. Aug. 11, 2025), ECF No. 14.

**B. Due Process**

Petitioner challenges his detention as unlawful based on ICE’s decision to revoke his release without providing the required opportunity to be heard. (Doc. 1 at 2, 15–17; Doc. 9 at 2.) Petitioner’s claims therefore implicate the Due Process Clause. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94. The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard “at a meaningful time and in a meaningful manner.” *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, “when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days,” also known as the “removal period.” 8 U.S.C § 1231(a)(1)(A). “If

the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13. Both regulations were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). The Parties discuss both regulations in their filings, and it is unclear from the record which regulation controls. Under either regulation, however, ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.

**1. 8 C.F.R. § 241.4**

In relevant part, release may be revoked under 8 C.F.R. § 241.4 when the Executive Associate Commissioner or a district director believes revocation "is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R. § 241.4(l)(2)(iii). "Upon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and "will be afforded an initial informal interview promptly after his or her return" to be given "an opportunity to respond to the reasons for revocation stated in the notification." § 241.4(l)(1).

Petitioner argues his re-detention is procedurally deficient because he has not received an interview to respond to the reasons for the revocation of his release. (Doc. 1 at 2, 15–17; Doc. 9 at 2.)[3] Petitioner was taken into ICE custody on August 25, 2025,

[3] This tentative ruling does not address whether ICE complied with the requirement that, "upon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release." 8 C.F.R. §§ 241.4(l)(2)(iii), 241.13(i)(3). Petitioner focuses his argument on the interview and opportunity to respond requirement. Respondents did not file a Notice of Revocation of Release, nor did they attempt to argue that Petitioner was provided such notice. If a Notice exists and was provided to Petitioner, Respondents may file it before

which means ICE has had over a month to provide to Petitioner the required interview and opportunity to respond. (Doc. 1 at 25.) Respondents do not argue to the contrary. Instead, they represent only that "ICE revoked Petitioner's Order of Supervision for the purpose of executing his final order of removal" and that they are "working expeditiously to acquire the necessary travel document in order to effectuate Petitioner's removal to Vietnam." (Doc. 7 at 6.) Because ICE failed to comply with 8 C.F.R. § 241.4(l), Petitioner's detention is unlawful. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (finding an interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as . . . prompt" and granting habeas petition); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner likely to succeed on his claim that his detention was unlawful "[b]ecause there is no indication that an informal interview was provided"); *Liu v. Carter*, Case No. 25-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding "that officials did not properly revoke petitioner's release" because "most obviously . . . petitioner was not granted the required interview upon the revocation of his release")).

**2. 8 C.F.R. § 241.13**

This section has the same requirements as 8 C.F.R. § 241.4 in that, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release" and will be afforded "an initial informal interview promptly after his or her return to Service custody" to be given "an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). Section 241.13 also provides "special review procedures" that apply where, among other conditions, a noncitizen "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." § 241.13(a). "The Service may revoke [a noncitizen's] release under this section and return

---

the October 23 hearing. But on this record, the Court also tentatively finds the lack of notice violates the regulatory requirements.

the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2).

As discussed above, ICE's failure to provide an interview and opportunity to respond is reason enough to find Petitioner's detention unlawful. Under § 241.13(i)(2), there is an additional problem: Respondents cannot show that "on account of changed circumstances, the Service determine[d] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.*

The United States Department of Homeland Security ("DHS") Form I-213 documenting Petitioner's arrest does not indicate that ICE made such a determination. (*See* Doc. 7-2.) The sworn declaration of Deportation Officer Cole states that ICE Enforcement and Removal Operations ("ERO") is "work[ing] expeditiously to effectuate Petitioner's removal to Vietnam. These removal efforts remain ongoing. ERO has been diligently preparing a travel document (TD) request to send to the Vietnam embassy. . . ." (Cole Decl. ¶¶ 8–9.) With these statements, Respondents concede that they have not yet submitted a travel document request to Vietnam.

Deportation Officer Cole states further:

> Based on my experience and having reviewed the progress of Petitioner's [travel document] request, there is a high likelihood of removal to Vietnam in the near future. . . . ICE has been routinely obtaining travel documents for Vietnamese citizens, including those who, like Petitioner, entered the United States before 1995. Compared to fiscal year 2024, where ICE removed 58 Vietnamese citizens, ICE has removed 587 Vietnamese citizens to Vietnam this fiscal year (as of September 18, 2025). ICE has flights to Vietnam scheduled every month, including one next month.

(Cole Decl. ¶¶ 11–14.)

These statements are insufficient to show that there is now a significant likelihood of Petitioner's removal due to changed circumstances. The Court finds the analysis offered in *Nguyen v. Hyde* instructive. *See Nguyen*, Civil Action No. 25-cv-11470-MJJ, ---F. Supp. 3d ---, 2025 WL 1725791, at *4 (D. Mass. June 20, 2025). The court in *Nguyen* found it

was "missing some very pertinent information," including the total number of requests for removal that were made to Vietnam. *Id.* For instance, the court reasoned that "[i]f DHS submitted 350 requests and Vietnam issued travel documents for 328 individuals," removal was significantly likely. *Id.* However, "if DHS submitted 3,500 requests and only 328 individuals received travel documents," the court would find differently. *Id.* Similarly, here, although Respondents note 587 Vietnamese citizens were removed to Vietnam, there is no information about what percentage of total requests to Vietnam those 587 successful requests represent.

Moreover, Respondents do not identify how many of the 587 individuals removed were Vietnamese refugees who entered the United States before 1995. This lack of information "is especially significant given that . . . the United States has had a long history of not being able to remove pre-1995 Vietnamese arrivals." *Id.* (*See also* Doc. 1 at 4–5 n.2 & 3.) As discussed above, Petitioner entered the United States as a refugee in 1979. (Doc. 1 at 25.) Because Vietnam refused to accept for repatriation Vietnamese nationals who entered the United States as refugees before 1995, Petitioner already spent six months in custody while ICE tried and failed to secure travel documents for Petitioner's deportation to Vietnam. (*Id.* at 25.) Respondents have not sufficiently explained why obtaining a travel document for Vietnam is more likely this time. *Accord Hoac*, 2025 WL 1993771, at *4 ("Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance" such that "there is now a significant likelihood Petitioner will be removed to Vietnam in the reasonably foreseeable future."). Thus, the record does not show "a significant likelihood" that Petitioner "may be removed in the reasonably foreseeable future" on account of "changed circumstances." *See* 8 C.F.R. § 241.13(i)(2).

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations.") ICE failed to do so here.

The Court's research indicates that every district court, except two,[4] to consider the issue has "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz*, 2025 WL 2646165, at *4; *see, e.g.*, *K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels [the petitioner's] release."). This Court reaches the same conclusion. ICE's failure to comply with both 8 C.F.R. § 241.4 and § 241.13 violated Petitioner's due process rights. *See Diaz*, 2025 WL 2581575, at *7 ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L.*, 2025 WL 2430267, at *11 ("ICE's failure to provide [the petitioner] with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of [the petitioner's] due process rights in that they deprived her both of meaningful notice and an opportunity to be heard.").

Accordingly, the Petition is tentatively **GRANTED**.

---

[4] *See Medina v. Noem*, Case No. 25-cv-1768-ABA, 2025 WL 2306274, at *12 (D. Md. Aug. 11, 2025); *Louangmilith v. Noem*, Case No.: 25-cv-2502-JES-MSB, 2025 WL 2881578, at *3–4 (S.D. Cal. Oct. 9, 2025). But in *Medina*, the petition was denied without prejudice because the petitioner "has not pointed to authority showing that the remedy for a violation of [§ 241.4] (if such a violation has occurred) is release from detention." *Medina*, 2025 WL 2306274, at *11. Here, Petitioner has. (*See* Doc. 1 at 15–17; Doc. 9 at 2, 4–6.) And in *Louangmilith*, the petition was denied without prejudice because of the "unique factual circumstances" that distinguished the case from others in line with the great weight of district court opinions on the issue. *Louangmilith*, 2025 WL 2881578, at *4.

## IV. CONCLUSION

For the foregoing reasons, the Petition is tentatively **GRANTED**. The Court **SETS** a hearing on the Petition for **October 23, 2025 at 10:00 a.m. in Courtroom 5B** of the Edward J. Schwartz United States Courthouse.

**IT IS SO ORDERED**.

DATE: October 17, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE